# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:

Robert S. Francis, Jr.                                      Chapter 13

                                                            Case No.:  13-11971

            Debtor

_____/

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## PURSUANT TO 11 U.S.C. SECTION 362

     Citizens Bank, N.A. f/k/a RBS Citizens, N.A. ("Citizens"), a creditor in the above captioned Chapter 13 proceeding, moves this Court for an Order pursuant to 11 U.S.C. §362(d) for relief from the automatic stay of 11 U.S.C. §362(a) so that it may foreclosure a Mortgage which it holds on real property known and numbered as 40 Holburn Avenue, Cranston, RI 02910.

     The basis of the within Motion are set forth in the Memorandum filed herewith which is incorporated herein by reference.

                                        Citizens Bank, N.A. f/k/a
                                        RBS Citizens, N.A.,
                                        By its attorneys,

Date: March 24, 2015                    /s/ Joseph Dolben, Esq.
                                        Joseph Dolben, Esq., #7916
                                        Marinosci Law Group, P.C.
                                        275 West Natick Road, Suite 500
                                        Warwick, RI 02886
                                        Telephone: (401) 234-9200
                                        Jdolben@mlg-defaultlaw.com

Within fourteen (14) days after service as evidenced by the certification and an additional three (3) days pursuant to Fed. R. Bankr. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Bankruptcy Court Clerk`s Office, 380 Westminster Mall, 6th Floor, Providence, RI 02903 (401) 626-3100.  If no objection or other response is timely filed within the time allowed herein, the paper will be deemed unopposed and will be granted unless:  (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF RHODE ISLAND**

In re:

Robert S. Francis, Jr.                                    Chapter 13

                                                          Case No.:  13-11971

       Debtor

_____/

<u>CERTIFICATE OF SERVICE</u>

       I, Joseph Dolben, Esq., of Marinosci Law Group, P.C., do hereby certify that on March 24, 2015, I served a copy of the Motion for Relief on the attached service list by mailing a copy of same by first class mail, postage prepaid or other method specified on service list.

       Signed this 24th day of March, 2015.

                                 /s/ Joseph Dolben, Esq.

                                 Joseph Dolben, Esq., #7916

                                 Marinosci Law Group, P.C.

                                 275 West Natick Road, Suite 500

                                 Warwick, RI 02886

                                 Telephone: (401) 234-9200

<u>VIA ECF</u>

Robert B. Jacquard, Esq., on behalf of Debtors

Gary L. Donahue, on behalf of the U.S. Trustee

John Boyajian, on behalf of the Trustee

<u>VIA US MAIL</u>

Robert S. Francis, Jr.

40 Holburn Avenue

Cranston, RI 02910

City of Cranston

Town Hall-Tax Collector

869 Park Avenue

Cranston, RI 02910

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:

Robert S. Francis, Jr.                                    Chapter 13

                                                         Case No.:  13-11971

       Debtor

_____/

### MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362

Now comes Citizens Bank, N.A. f/k/a RBS Citizens, N.A. ("Citizens") and, in support of its motion, states the following:

1.      On April 29, 2011, Robert S. Francis, Jr. ("Debtor"), executed and delivered a Note to RBS Citizens, N.A. (attached hereto as Exhibit "A", the "Note").  The Note is secured by a Mortgage executed by Debtor also dated April 29, 2011 and recorded in the City of Cranston Land Evidence Records in Book LR4365 at Page 46 (attached hereto as Exhibit "B, the "Mortgage") on real property owned by the Debtor and known and numbered as 40 Holburn Avenue, Cranston, RI 02910 (the "Real Property").

2.      Citizens is the current holder of the Note and Mortgage by virtue of assignment of mortgage recorded in the City of Cranston Land Evidence Records in Book 4607 at Page 61 (attached hereto as Exhibit "C").

3.      There is no other collateral securing the Note.

4.      On July 26, 2013, Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.

5.      As of March 1, 2015, the delinquency owed by the Debtors on the Note is $7,828.20.  Citizens estimates that, if a hearing on this motion is held within thirty days of the date of filing, an additional payment and late charge will come due and owing.

6.      According to the Debtor's Schedule A, the fair market value of the Real Property is $137,000.00.

7.      Citizens estimates that the liquidation value is no greater than $137,000.00.

8.     Upon information and belief, there are no additional liens or encumbrances on the

Real Property.

9.     As of March 1, 2015, the total outstanding balance owed on the Note was

$170,516.23.

10.     The estimated total amount of encumbrances on the Real Property is $170,516.23.

11.     Debtor's Chapter 13 Plan was confirmed on November 1, 2013, which provides

for direct post-petition payments to Citizens.

12.     Citizens is entitled to relief from the automatic stay for cause pursuant to 11

U.S.C. §362(d)(1) because Debtor has not made payments pursuant to the Note and Mortgage.

WHEREFORE, Citizens moves that the Court enter an Order granting Citizens relief

from the automatic stay pursuant to 11 U.S.C. §362(d) so that it, and its successors and assigns,

may proceed to exercise its rights pursuant to the Note and Mortgage.  They may also proceed

according to applicable state and federal law and to commence a summary process action against

occupants of the Real Property.

Citizens Bank, N.A. f/k/a RBS Citizens,
N.A.,

By its attorneys,

Date:  March 24, 2015          /s/ Joseph Dolben, Esq.
Joseph Dolben, Esq., #7916
Marinosci Law Group, P.C.
275 West Natick Road, Suite 500
Warwick, RI 02886
Telephone: (401) 234-9200
jdolben@mlg-defaultlaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

R.I. Local Bankr. Form R

- - - - - - - - - - - - - - - - - - - - - - - - - - - *

In re:                                      :

Robert S. Francis, Jr.

                         :                  BK No. 13-11971

      Debtor                                Chapter 13

- - - - - - - - - - - - - - - - - - - - - - - - - - - *

## RELIEF FROM STAY WORKSHEET – REAL ESTATE

I _Jean C. Bowles_____ Citizens Bank, N.A. f/k/a RBS
Citizens, NA (hereinafter, "Movant") hereby declare (or certify, verify, or state):

### BACKGROUND INFORMATION

1. Real property address which is the subject of this motion: <u>40 Holburn Avenue, Cranston, RI 02910</u>

2. Lender Name: <u>RBS Citizens, N.A.</u>

3. Date of Mortgage: <u>April 29, 2011</u>

4. Post-Petition payment address:  <u>Citizens Bank, N.A. f/k/a RBS Citizens, NA, 10561 Telegraph Road, Glen Allen, VA 23059</u>

5. The manner in which the movant perfected its interest in the property: <u>Assignment of Mortgage</u>

6. All other material liens and encumbrances on the property:

      N/A

### DEBT/VALUE REPRESENTATIONS

7. Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion<u>: $170,516.23, as of 3/1/15</u>
(Note: this amount may not to be relied on as a "payoff" quotation.)

8. Movant's estimated market value of the real property: <u>$137,000.00.</u>

9. Source of estimated valuation: <u>Debtor's Schedule A</u>_____.

## STATUS OF DEBT AS OF THE PETITION DATE

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:

   $175,339.74 – For breakdown please see Claim No. 8-1, which is incorporated herein by reference.

   A. Amount of principal: $ _____.
   B. Amount of interest: $ _____.
   C. Amount of escrow (taxes and insurance): $ _____.
   D. Amount of forced placed insurance expended by Movant: _____.
   E. Amount of Attorney's fees billed to Debtor(s) pre-petition: $ _____.
   F. Amount of pre-petition late fees, if any, billed to Debtor(s): $ _____.

11. Contractual interest rate: 4.75%   (If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: __.)

12. Please explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtor's account and not listed above:

## AMOUNT OF ALLEGED POST-PETITION DEFAULT (AS OF 03/01/2015

13. Date last payment was received: _____03/04/2015_____ (mm/dd/yyyy)

14. Alleged total number of payments post-petition from filing of petition through payment due on __6_____ (mm/dd/yyyy): ____10/01/2014____

15. Please list all post-petition payments alleged to be in default:

## SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | | Payment Amount Due Post Petition |
|---|---|---|
| 10/01/2014 | | $1,312.80 |
| 11/01/2014 | | $1,303.08 |
| 12/01/2014 | | $1,303.08 |
| 01/01/2015 | | $1,303.08 |
| 02/01/2015 | | $1,303.08 |
| 03/01/2015 | | $1,303.08 |
| Totals: | | $7,828.20 |

## SCHEDULE OF PAYMENTS THAT WERE RECEIVED

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount applied to legal fees or costs (specify) |
|------|-----------------|------------------------------------------|--------------------------|---------------------------|-------------------------------------------------|
| 03/04/2015 | $1,312.80 | N/A | N/A | N/A | N/A |
| **Totals:** | **$$1,312.80** | | | | |

16. Amount of Movant's Attorneys fees billed to Debtor for the preparation, filing and prosecution of this motion: $ _850.00_ .

17. Amount of Movant's filing fee for this motion: $ __176.00__ .

18. Other Attorney's fees billed to Debtor post-petition: $ _____ .

19. Amount of Movant's post-petition inspection fees: $ _____ .

20. Amount of Movant's post-petition appraisal/broker's price opinion: $ _____ .

21. Amount of forced placed insurance or insurance provided by the Movant post-petition: $ _____ .

22. Sum held in suspense by Movant in connection with this contract, if applicable: $ _____ .

23. Amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.: ___$9,085.94___ .

24. Amount and date of post-petition payments offered by the debtor and refused by the Movant: No payments refused

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)   Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit _A, B,_____.)

(2)   Copies of documents establishing proof of standing to bring this Motion. (Exhibit ___A, B and C___.)

(3)   Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of the

Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibit __B, C__ .)

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matter, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows: _____.

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on __3/18/2015__ [date]

__Joan C Bowles__
[signature]

__Bankruptcy Specialist__
[title]

Subscribed and sworn to before me this __18th__ day __March 2015__ [date]

__Karen D. Garton__
Notary Public:
My commission Expires: __02-29-16__



Case 1:13-bk-11971   Doc 25-6   Filed 03/24/15   Entered 03/24/15 13:25:17   Desc
Redacted Document Full document 3   Page 9 of 21
Case 1:13-bk-1197     Claim 8-1   Filed 10/28/     Desc Main Document     Page 16 of 22





Francis

Multistate  **NOTE** MIN: ▓▓▓▓▓▓▓▓▓▓  FHA Case No.

April 29, 2011
[Date]

40 Holburn Avenue  Cranston, RI  02910-
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means RBS Citizens, N.A.
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred fifty-one thousand five hundred fifty-seven and 00/100

Dollars (U.S. $ 151,557.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of four and three-quarters percent (          4.750  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on June 1          , 2011          . Any principal and interest remaining on the first day of May 2041          , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at CCO Mortgage, 10561 Telegraph Road, Glen Allen, VA 23059
                    or at such place as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 790.60          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

VMP1R (08/06)
Page 1 of 3

D001:1.f/1 (2/03)

Case 1:13-bk-11971 Doc 25-6 Filed 03/24/15 Entered 03/24/15 13:25:17 Desc
Redacted Document Full document 3 Page 10 of 21
Case 1:13-bk-11971 Claim 8-1 Filed 10/28/13 Desc Main Document Page 17 of 22

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of four percent ( 4 . 0 0 0 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

D001r2.uff (2/03)



10/95
VMP4R (0509)
Page 2 of 3

Case 1:13-bk-11971   Doc 25-6   Filed 03/24/15   Entered 03/24/15 13:25:17   Desc
Redacted Document Full document 3 Page 11 of 21
Case 1:13-bk-11971   Claim 8-1   Filed 10/28/13   Desc Main Document    Page 18 of 22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Robert S Francis, Jr_ _____ (Seal)
/Robert S Francis, Jr        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1N (0705).
Page 3 of 3

D001r3u5f (11/05)

Return To:

CCO Mortgage
P.O. Box 4060, Glen Allen, VA
23058

Prepared By:

```
20110502004617B Bk:LR4365 Pg:46
RECORDED Cranston,RI 1/9
05/02/2011 08:46:57 AM RTC
```

──────────────── [Space Above This Line For Recording Data] ────────────────

State of Rhode Island                    **MORTGAGE**          FHA Case No.

MIN

THIS MORTGAGE ("Security Instrument") is given on **April 29, 2011**
The Mortgagor is **Robert S Francis, Jr**

whose address is **293 Magnolia Street, Cranston, RI  02910-**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. **RBS Citizens, N.A.**

("Lender") is organized and existing under the laws of **the United States of America**                    , and
has an address of **One Citizens Plaza, Providence, RI  02903**
                                                        . Borrower owes Lender the principal sum of
**one hundred fifty-one thousand five hundred fifty-seven and 00/100**
                                    Dollars (U.S. $**151,557.00**                    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on **May 1, 2041**
                            . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and

FHA Rhode Island Mortgage with MERS - 4/96
**-4N(RI)** (0609)                    Amended 2/01
Page 1 of 8                    Initials:
                    VMP Mortgage Solutions, Inc.

D004n1ri.uff (2/03)

Case 1:13-bk-11971   Doc 25-6   Filed 03/24/15   Entered 03/24/15 13:25:17   Desc
Redacted Document Full document   Page 13 of 21
Exhibit Full document   Page 9 Page 13 of 21

20112502004617D Bk.LK4365 Pg:47
RECORDED Cranston,RI 2/8
05/02/2011 08:46:57 AM MTG

assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in **Providence**

County, Rhode Island:

Parcel ID Number: **Page 51**
which has the address of **40 Holburn Avenue**                                              [Street]
**Cranston**                          [City], Rhode Island **02910-**          [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq*, and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

VMP-4N(RI) (0509)

DO04n2r\.vff (2/03)

Page 2 of 8

Initials: _____

2011050220046170 Bk:LR4366 Pg:48
RECORDED Cranston,RI 3/8
06/02/2011 09:45:57 AM MTG

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or



-4N(RI) (0509)

D004n3ri.uff (2/03)

Page 3 of 8

Initials: 

Case 1:13-bk-11971  Doc 25-6  Filed 03/24/15  Entered 03/24/15 13:25:17  Desc
Redacted Document Full document  Page 15 of 21
Exhibit Full document  Page 4 of 9

2811195020846170 Bk LR4365 Pg:49
RECORDED Cranston,RI 4/9
06/02/2011 08:45:57 AM MTG

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:


-4N(RI) (0100)

D00 4n4si sft (2/0 03)

Page 4 of 8

Initials: [signature]

Case 1:13-bk-11971 Doc 25-6 Filed 03/24/15 Entered 03/24/15 13:25:17 Desc
Redacted Document Full document Page 16 of 21
Exhibit Full document Page 6 of 9



20110502004617G Bk:LN4565 Pg:60
RECORDED Cranston,RI 5/9
05/02/2011 08:45:57 PM MTG

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.





Initials

2011050220046170 Bk:LR4365 Pg:51
RECORDED Cranston,RI 6/9
05/02/2011 08:45:57 AM MTG

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

 -4N(RI) (9909)

D004n6xLuft (2/03)

Page 6 of 8

Initials 

Case 1:13-bk-11971   Doc 25-6   Filed 03/24/15   Entered 03/24/15 13:25:17   Desc
Redacted Document Full document   Page 18 of 21
Exhibit Full document   Page 7 of 9

201105320046170 BK:LR4365 Pg:52
RECORDED Cranston,RI 7/0
05/02/2011 08:45:57 AM MTG

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of notice of sale to Borrower as provided in paragraph 13. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Growing Equity Rider            ☐ Other [specify]
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider

Initials RS7gh

201105020046170 Bk:LR4365 Pg:93
RECORDED Cranston,RI 9/9
05/02/2011 09:45:57 AM RTC

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in
any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            Robert S Francis, Jr          -Borrower

                                            _____ (Seal)
                                                                          -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                       -Borrower

STATE OF RHODE ISLAND, Kent                              County ss:
      On this 29  day of April  , 2011 , in Warwick
in said County, before me personally appeared Robert S Francis, Jr

                                            each and all to me known and known
to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be his/her/their free
act and deed.

                                            Notary Public
                                            my comm. exp. 8/13/13

-4N(RI) (0409)                    Page 8 of 8
D004n8ri.uff (2/05)

Case 1:13-bk-11971   Doc 25-6   Filed 03/24/15   Entered 03/24/15 13:25:17   Desc
Redacted Document Full document   Page 20 of 21
Exhibit Full document Page 9 of 9

201105020046170 Bk:LR4365 Pg:54
RECORDED Cranston,RI 9/9
05/02/2011 08:45:57 AM MTG

EXHIBIT "A"

That certain lot or parcel of land situated in the City of Cranston, County of Providence, State of Rhode Island, laid out and described as Lot Number eighty-four (84) on that plat of land entitled "Green Acres, City of Cranston, R.I. belonging to Mechanics Realty Company, Esten and Black Engineers, July, 1923", said plat is on record in the Office of the City Clerk Cranston in Plat Book 10 at Page 46 and a copy of Plat Card No. 254.

Property Address for Reference Purposes Only:
40 Holburn Avenue
Cranston, Rhode Island
AP #5, Lot #1946

A.L.T.A. COMMITMENT

Case 1:13-bk-11971   Doc 25-6   Filed 03/24/15   Entered 03/24/15 13:25:17   Desc
Redacted Document Full document   Page 21 of 21
Exhibit Full document   Page 21 of 21

**ASSIGNMENT OF MORTGAGE**

20120920121060 Bk:LR4607 Pg:61
RECORDED Cranston,RI 1/1
09/20/2012 10:35:23 AM ASGT MTG

MIN [REDACTED] 5174

Mortgage Electronic Registration Systems, Inc., 1901 E. Voorhees Street, Suite C, Daville, IL 61834 holder of a mortgage from Robert S. Francis Jr. to Mortgage Electronic Registration Systems, Inc. dated April 29, 2011, and recorded with the Records of Land Evidence in the City of CRANSTON on May 2, 2011 at 8:45 AM at Book 4365, Page 46 assigns said mortgage to RBS Citizens, NA, One Citizens Plaza, Providence, RI 02903

Property Address:     40 HOLBURN AVENUE, CRANSTON, RI 02910

IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc. has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by _JANICE MCDANIEL_ ,

this _16TH_ day of _August_ , 2012

Mortgage Electronic Registration Systems, Inc.

By: _[signature]_

The State of VIRGINIA

Henrico County, ss                                    August 16 , 2012

On this _16TH_ day of _August_ 2012 , before me, the undersigned notary public, personally appeared _JANICE MCDANIEL_ , proved to me through satisfactory evidence of identification, which were _Securial Badge_ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

Capacity: (as _ASSIST SECRETARY_ for Mortgage Electronic Registration Systems, Inc. )

_[signature]_ (Affix Seal)
Notary Signature

My commission expires: _5/31/2016_

BERNICE RUSSELL
NOTARY
PUBLIC
REG. #260584
MY COMMISSION
EXPIRES
5/31/2016
COMMONWEALTH OF VIRGINIA